CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
APR 08 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | ) Civil Action No.: 5:13cv00026<br>) |
| v. | )<br>) |
| $18,690.00 IN U.S. CURRENCY, | ) By: Hon. Michael F. Urbanski<br>) United States District Judge |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

This matter is before the court on the Government's motion to strike the claim for seized property by Brahim M. Elkory. (Dkt. No. 20). For the reasons set forth below, the court **GRANTS** the Government's motion.

### I. Facts and Procedural History

In this *in rem* civil forfeiture action, the Government seeks the forfeiture of $18,690.00 in United States currency. The facts are set out in the affidavit of David T. Liu, a special agent with the Department of Homeland Security, Immigration and Customs Enforcement. (Dkt. No. 1-1). The currency was seized during a traffic stop on August 9, 2012, near mile marker 277 of the southbound lanes of Interstate 81. A Virginia State Trooper pulled over a Dodge Caravan for a suspected violation of Va. Code § 46.2-1078 (operating a vehicle while wearing headphones). The driver of the vehicle, Hacen Ouldelhakem, was in fact wearing headphones. According to the Trooper, he also appeared to be extremely nervous. There was one passenger in the vehicle, Saleck Bakary, who also appeared nervous. Based on paperwork given to him by Ouldelhakem, the Trooper determined that the van was rented, but not in either Ouldelhakem's or Bakary's name.

1

Additionally, Ouldelhakem and Bakary told somewhat conflicting versions of their travel history to the Trooper.

Suspicious, the Trooper asked to search the vehicle and Ouldelhakem consented. During the course of his search of the vehicle, the Trooper discovered eight bundles of U.S. currency wrapped in a black plastic trash bag located under the back of the driver's seat. Both Ouldelhakem and Bakary disavowed ownership or knowledge of the money. A drug dog alerted for the presence of narcotics on the currency and it was taken into custody. Brahim M. Elkory contacted the Government the next day, asserting that the currency belonged to him. He stated that he had received half of it as a loan and the other half was proceeds of his work as a taxi driver. Elkory did not, however, follow up on his claim by providing any additional information.

The Government brought this *in rem* action on March 14, 2013, asserting that pursuant to 21 U.S.C. § 881(a)(6), the currency is subject to forfeiture as property that was used, or was intended to be used, to facilitate a drug trafficking offense in violation of 21 U.S.C. § 801 et seq., and/or represents proceeds from a violation thereof. (Dkt. No. 1). Elkory, through counsel, filed an answer and a claim for the seized property on April 19, 2013. In his claim, Elkory simply states that his "interest in the specific property claimed lies solely with the fact that it belong to him." (Claim for Seized Property, Dkt. No. 4, at 1). The Government sent special interrogatories to Elkory on September 5, 2013. Both parties agreed to extend the time to respond to the interrogatories by two weeks. On October 8, 2013, Elkory responded. Elkory provided his full name, stated that he was an American citizen, and noted that he "claims the full $18,690 seized." He also stated that the currency was not narcotics proceeds and denied having had currency seized from him on other occasions or having criminal history. He provided no further information, objecting to the overwhelming majority of the Government's interrogatories. (See Dkt. No. 20-2).

On January 15, 2014, the Government filed the pending motion. The court heard oral argument on February 20, 2014.

## II. Discussion

Claims made for defendant property in an *in rem* forfeiture actions are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, specifically Supplemental Rule G(5)(a). Supplemental Rule G(5)(a) states as follows:

(5) Responsive Pleadings.

(a) Filing a Claim.

(i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:

(A) identify the specific property claimed;
(B) identify the claimant and state the claimant's interest in the property;
(C) be signed by the claimant under penalty of perjury; and
(D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

The Government has moved pursuant to Supplemental Rule G(8)(c)(i)(A) to strike Elkory's claim for failure to comply with Supplemental Rule G(5). A claimant who fails to comply with the Supplemental Rules lacks statutory standing to assert a claim. United States v. $119,030.00 in U.S. Currency, 955 F. Supp. 2d 569, 577 (W.D. Va. 2013) (citation and internal quotation marks omitted) ("Statutory standing is established through compliance with both the statutory and procedural requirements delineated in 18 U.S.C. § 983(a)(4)(A) and Rules G(5)(a)(i)(B) and (C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.").

District courts in the Fourth Circuit[1] have routinely interpreted Supplemental Rule G(5)(a)(i) to require more than "a bald assertion of ownership" to assert a claim and establish standing. See United States v. $307,970.00, in U.S. Currency, No. 4:12–CV–136–FL, 2013 WL 4095373, at *4 (E.D.N.C. Aug. 13, 2013); United States v. $104,250.00 in U.S. Currency, 947 F. Supp. 2d 560, 563–65 (D. Md. 2013); United States v. Various Vehicles, Funds, & Real Properties Described in Attachment A, CA 2:11–1528–DCN–SVH, 2011 WL 6012424, at *2 (D.S.C. Oct. 25, 2011); United States v. Real Property Located at 5201 Woodlake Dr., 895 F. Supp. 791, 793 (M.D.N.C.1995). As the District Court of Maryland notes, "[t]he only safeguard the courts have against the filing of false claims in civil *in rem* proceeding is the threat that the filing of a false claim will trigger a perjury prosecution." $104,250.00 in U.S. Currency, 947 F. Supp. 2d at 564. Under Supplemental Rule G(6), the Government may use special interrogatories to enhance this safeguard and to facilitate its investigation into the claimant's standing. Id. at 565.

Statutory and Article III standing inquiries are often blurred in forfeiture cases because if the claimant has sufficiently asserted a "legally cognizable interest in the property that will be injured if the property is forfeited to the government," as Supplemental Rule G(5)(a)(i)(B) requires, then the claimant will have Article III standing as "an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." $119,030.00 in U.S. Currency, 955 F. Supp. 2d at 576 (quoting United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 497 (6th Cir.1998)). The Government can challenge

---

[1] Two recent Seventh Circuit decisions authored by Judge Posner have held that such a "bald assertion" is sufficient to establish a claimant's standing. See U.S. v. $196,969.00 U.S. Currency, 719 F.3d 644, 646 (7th Cir. 2013) ("Actually the 'bald assertion' would strictly comply with [Rule G(5)(a)(i)]; the additional assertions required by the [district court] judge have no basis in it."); U.S. v. Funds in the Amount of $574,840, 719 F.3d 648, 653–54 (7th Cir. 2013) ("express[ing] skepticism" about the requirement that the claimant "provide more evidence than Rule G(5)(a)(i) requires). But the most recent district court case in the Fourth Circuit specifically rejects these cases as contrary to the law in this circuit. See United States v. $307,970.00, in U.S. Currency, No. 4:12–CV–136–FL, 2013 WL 4095373, at *3 n.3 (E.D.N.C. Aug. 13, 2013) ("It is worth noting that district courts within the Fourth Circuit have held that Article III standing is not so easily established as the Seventh Circuit determined it is.").

4

statutory standing under Rule G(5) at any time before trial. $307,970.00, in U.S. Currency, 2013 WL 4095373, at *3; Fed. R. Civ. P. Supp. R. G(8)(c)(i). The court will address Elkory's statutory standing only, as a failure to satisfy the statutory standing requirements will necessarily mean that Elkory's claim must be dismissed, regardless of Article III standing.

It is clear that both Elkory's claim and his responses to the special interrogatories that the Government propounded pursuant to Supplemental Rule G(6) do nothing more than make a bare assertion of ownership.[2] Elkory has failed to provide any justification for this clear violation of the requirements of Supplemental Rule G(5)(a)(i)(B) other than to assert that he should be granted "some latitude" because "at some point in time of our nation's history" a mere bald assertion of ownership would be sufficient to establish his standing. (Cl.'s Mem. in Opp'n to Mot. to Strike, Dkt. No. 23, at 3). Laws often change. This fact provides no refuge for those who fail to comply with clearly established law as it exists today. Elkory's claim that he has complied with Supplemental Rule G(5) "as plainly written" is completely incongruous with the overwhelming case law to the contrary.

It should also be noted that Elkory is not a *pro se* litigant putting forth a good faith effort to interpret a vast array of federal statues, rules, and case law. Elkory is represented by counsel. By failing to file a valid claim, and by failing to remedy that failure in either of his responses to the Government's special interrogatories, he has therefore apparently made a "strategic choice." $104,250.00 in U.S. Currency, 947 F. Supp. 2d at 566. As such, it is appropriate to strike his claim, particularly where "giving [the claimant] still another opportunity to file a claim that sets forth the

---

[2] Elkory's one page claim states only that he is "the claimant in this matter" and that his "interest in the specific property claimed lies solely with the fact that it belongs to [him]." (Dkt. No. 4). His responses to the special interrogatories are similarly scarce, providing vague answers to just five of the Government's fifteen interrogatories. (Dkt. No. 20-2). In response to the Government's detailed interrogatory inquiring about the circumstances of Elkory's claim to the property, he replies simply that "Claimant claims the full $18,690 seized." (Dkt. No. 20-2). Only after the Government filed its motion to strike did Elkory file supplemental answers to the Government's interrogatories on February 4, 2014, but he continued to object to the majority of the interrogatories. At all times, Elkory has also failed to provide any documentation regarding the van rental or his practice of "routinely buy[ing] goods and ship[ping] them in large cargo containers to friends and family in Mauritania." (Cl.'s Supp. Interrogs., Dkt. No. 23-1, at 5).

time and circumstances of [his] acquisition of the defendant property would accomplish nothing." Id.

In this case, even Elkory's proposed amended complaint fails to add any specific information about his interest in the property, and attaches the same checks, taxi license, receipt, and letter that were attached to the supplemental interrogatory answers. (Dkt. No. 23-2). Notably, Elkory's counsel argues in his brief in opposition to the government's motion to strike that counsel for the Government "made no attempt whatsoever to resolve the matter with opposing counsel before filing her motion." (Cl.'s Mem. in Opp'n to Mot. to Strike, Dkt. No. 23, at 2). Additionally, it was not until *after* the Government filed its motion that Elkory filed supplemental answers to the Government's interrogatories on February 4, 2014, although he continued to object to the majority of the interrogatories. These delaying tactics lead the court to conclude that allowing Elkory another chance to file a claim in this matter would be futile and a waste of judicial resources.

### III. Conclusion

For these reasons, the Government's motion to strike, Dkt. No. 20, is **GRANTED,** and the $18,690.00 is forfeited to the United States. Lacking an ownership or possessory interest in the subject currency, Elkory lacks both Article III and statutory standing. An appropriate Order will be entered.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered: 04-08-14

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge